UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                              Case No. 13-23732-LMI
                                                    Chapter 13
DAVID BEEM,

_____Debtor_____/

GARY A. FERGUSON'S EMERGENCY MOTION TO:
1) ALLOW SALE OF REAL PROPERTY TO CLOSE; 2) TURNOVER DEBTOR'S SALE
PROCEEDS TO CHAPTER 13 TRUSTEE; AND, 3) REAFFIRM COURT ORDERS IN CASE
NO. 12-22368-LMI

**REASON FOR URGENCY: THE SALE SOUGHT HEREIN HAS BEEN APPROVED
THREE SEPERATE TIMES BY THE COURT IN THE CHAPTER 11 BANKRUPTCY CASE
OF *IN RE GARY FERGUSON* IN CASE NO. 12-22368-LMI, AND BUYER HAS BEEN
FRUSTRATED**

Comes Now, Gary Allan Ferguson, debtor-in-possession ("Ferguson") in
Bankruptcy Case No. 12-22368-LMI ("Ferguson Bankruptcy"), by and through
undersigned counsel, hereby files and serves the instant *Emergency Motion To: 1) Allow
Sale Of Real Property To Close; 2) Turnover Debtor's Sale Proceeds To Chapter 13
Trustee; And, Reaffirm Court Orders In Case No. 1-22368-LMI*, and states the following:

1. Pre-petition, Ferguson and the Debtor, David Beem ("Beem"), were (and still
   are) embroiled in litigation styled *Gary Ferguson et al., vs. David Beem et al.*, in
   Case No. 07-34790 CA 20 ("Beem Litigation"). Debtor eventually obtained a
   judgment against Ferguson in the Beem Litigation for the sum of $339,955.00
   ("Beem Judgment") – for which Ferguson will seek to setoff with his claims
   against Debtor.

2. Additionally, Ferguson and his wife (Kim Ferguson), as husband and wife
   (tenants-by-the-entireties) owned certain real estate jointly with Debtor, which
   is the subject of this Motion and the earlier Ferguson's Motion (Ferguson
   DE#121) and *Amended Motion For Court Approval Of Sale Of Property*
   [Ferguson DE#131], Ferguson's *Emergency Motion To Clarify* (Ferguson
   DE#258), *Genovese Joblove & Battista's Motion To Approve Charging Lien
   For Attorney Fees And Costs* (Ferguson DE#262) and Beem's multiple
   Emergency Motion(s) (*see* Ferguson DE#'s 283, 286 and 287) (collectively all
   of the Ferguson DE#'s 121, 131, 258, 262, 283, 286 and 287 are referred to
   hereinafter as the "Ferguson Sale Motions").

3. The real estate subject of this Motion and related Sale Motions has the following Folio Number 10-7813-017-0040 ("Subject Real Estate"), and the following legal description:

> Lots 4, 5 and 6, E.F. BROOKERS ADDITION, a subdivision according to the Plat thereof, recorded in Plat Book 1 at Page 155 of the Public Records of Dade County; Begin 462 feet East of the SW Corner of SE ¼ of the NE ¼ of Section 13, Township 57 South, Range 38 East; Thence East 12 feet; Thence North 165 feet; Thence West 12 feet; Thence South 165 feet to the point of beginning, less any part thereof used as public street; and West 36 feet of the East 66 feet of the South 145 feet of the S1/2 of SW ¼ of the SE ¼ of NE ¼ of Section 13, Township 57 South, Range 38 East, less any part thereof used for purposes of a public street.

4. Hightop Investments, LLC, (a Florida limited liability company), has offered to purchase the Subject Real Estate subject to the terms and conditions set forth in that certain Purchase And Sale Agreement ("Sale Agreement"), identified as Exhibit "A" to Ferguson DE#131, and already previously filed with the Court and served upon all parties-in-interest and creditors, and again attached hereto as Exhibit "A", for the sum of $249,000.00 (TWO-HUNDRED and FORTY-NINE THOUSAND DOLLARS).

5. This Court has previously approved the Sale Agreement and authorized the sale to go forward (see Ferguson DE#'s 173, 277, 278 and 289), with the following caveats as it relates to the sale proceeds and payment of interests: a) the closing agent was authorized to pay standard closing costs; b) closing agent was authorized to pay outstanding real estate taxes for past years, and pro rata for the year 2013; c) deduct the sum of $992.50 form Debtor's (Beem's) interest in the net sale proceeds and remit same to the firm of Genovese Joblove and Battista ("GJB") as payment toward the charging lien GJB claims relating to the subject sale only, and not affecting the balance of GJB's requested charging lien in the Ferguson Bankruptcy arising out of GJB's prior representation of the Debtor viz-a-viz Debtor's claim in the Ferguson Bankruptcy (arising out of a judgment of several hundreds of thousands of dollars); d) pay the principal sum of $31,097.85 to the Lenore Ferguson Trust mortgage ("LFT Mortgage") – recorded in OR Book 21793 PG 1560 -- to satisfy its properly perfected lien, as well as pay the outstanding interest accrued thereon to the LFT Mortgage; e) pay the sum of $5,500.00 (LFT Mortgage

B. Miller PA Trust Account to be held pending further ruling by the Bankruptcy Court as to the disposition of same; and, f) after deducting the LFT Mortgage principal, interest, attorney fees and late fees from the gross sale proceeds, and all standard joint closing costs, then split the net balance between the Ferguson Estate and Debtor (Beem), with the requirement that GJB's charging lien portion associated with the sale totaling $992.50 be further deducted from Beem's interest.

6. Further, each of the Sale Orders (Ferguson DE#'s 173, 278 and 289) all waived the Rule 6004(h) waiting period making them effective immediately.

7. However, the filing of the instant Bankruptcy Case by Debtor (Beem) has derailed the contemplated closing.

8. It is requested that the Court provide re-affirmation of the Ferguson Sale Orders, and Charging Lien Order (DE#277),* and allow the sale to go through and close immediately, as well as now direct all net sale proceeds of this Debtor (Beem) to be forthwith turned over (after deducting all closing costs, and allowed closing payments as contemplated by the Sale Orders (*i.e.* the LMT Mortgage, principal, interest, attorney fees and late fees; the Miami-Dade County Real Estate taxes; GJB Charging Lien; etc.) to the Chapter 13 Trustee.

9. Also, it is requested that the Court approve the sale as an 11 U.S.C.§ 363 sale, with all liens, interests and encumbrances attaching to the proceeds therefrom, and deeming the buyer a good faith purchaser for value with 363(m) and (n) relief, as well as waiver of the fourteen (14) day waiting requirement under Rule 6004(h).

10. Additionally, the net sale proceeds from the sale which would flow to Ferguson and his wife, Kim, as tenants-by-the-entireties, are the funds which will be utilized to fund the Chapter 11 Plan, should same be approved by this Court. *See* Ferguson DE#220-1.

11. It is requested that the Court approve the sale to the Buyer (and/or its assigns) under the terms of the Purchase Agreement, and free and clear of all valid liens, interests and encumbrances, with same, if any, attaching to the proceeds.

12. It is further requested that the Court: a) make a finding that the sale of the Subject Real Property, per the terms of the Purchase Agreement is approved pursuant to 11 U.S.C. Section 363(a), (f), (g), (h) and (m); b) direct the owners (Beem and the Fergusons) to execute all reasonable and necessary documents to conclude the sale forthwith; c)

* Copies of the orders sought to be reaffirmed herein are attached hereto as Composite Exhibit "B".

reaffirm this Court's Sale Orders and G.B Charging Lien Order; authorize payment of the standard closing costs, brokerage/sale commissions, and the standard charges, d) find that the Buyers are deemed good faith purchasers for value; e) deem the property transferred free and clear of all liens, interests and encumbrances,† with same attaching to the sale proceeds, including free and clear of a claims and rights of the Fergusons and Beem, jointly and severally; f) waiving the fourteen (14) day waiting period set forth in Fed. R. Bankr. Proc. 6004(h) for the effectiveness of the sale order arising out of this Motion; and, g) directing that this Court retain sole and exclusive jurisdiction over the Purchase Agreement, the sale and the Parties, and any disputes relating thereto or arising therefrom.

WHEREFORE, Movant requests the foregoing relief, and for such other and further relief this Court deems equitable and just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY That a true and correct copy of this pleading (with Exhibits) was served *via* ecf service in pdf format immediately upon filing same with the Clerk of the Court on those named below; and *via* US mail this same date upon those named on the attached US mail service list, as well as *via* email in pdf format upon those named separately below:

Email service via ECF:

- Nancy K. Neidich          e2c8f01@ch13herkert.com
- Office of the US Trustee          USTPRegion21.MM.ECF@usdoj.gov
- Richard H Simonson          richard@richardsimonson.com, ecfsimonson@gmail.com

Separate Email service by the undersigned outside of ECF:

-Steve Losner <wellerandlosner@aol.com>,
-Mike Quinn <mquinn@cowmpa.com>,
-"WKightlinger@OldRepublicTitle.com" <WKightlinger@oldrepublictitle.com>,
-Barry Gruher <bgruher@gjb-law.com>,
-"Guitian, Mariaelena" <mguitian@gjb-law.com>,
-Andrew O'Malley <aomalley@cowmpa.com>,
-Jeff Berlowitz <jberlowitz@siegfriedlaw.com>,
-"envirolaww@aol.com" <envirolaww@aol.com>
-Jeffrey Norkin jeff@norkinlaw.com

---

† The sale is to be free and clear of all liens, interests and encumbrances, with the exceptions of all applicable laws, ordinances and governmental regulations, including but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations which affect the use and maintenance of the Real Property; as well as all restrictions, reservations, covenants, conditions, agreements, easements, limitations and other matters that appear of public records against the Real Property, excluding any mortgage liens, judgments, claim of liens or other title matters which can be satisfied by payment of a liquidated amount.

I HEREBY CERTIFY that I am admitted to the Bar for the District Court in and for the Southern District of Florida and am in compliance with the additional qualifications to practice before this Court as set forth in Local Rule 2090-1(A).

Dated: June 11th, 2013.

JAMES B. MILLER, PA
19 West Flagler Street, Suite 416
Miami, FL 33130
Tel. No. (305) 374-0200
Fax. No. (305) 374-0250
email: jbm@title11law.com

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 0009164

Label Matrix for local noticing
113C-1
Case 12-22368-LMI
Southern District of Florida
Miami
Tue Jun 11 14:12:33 EDT 2013

Elavon Inc
c/o Lisa Sims, Manager
7300 Chapman Highway
Knoxville, TN 37920-6612

Estate of Gary Brooks
c/o Jeffrey S. Berlowitz, Esq.
Siegfried, Rivera, Lerner, De La Torre &
201 Alhambra Circle
11th Floor
Coral Gables, FL 33134-5107

Genovese Joblove & Battista, P.A.
200 East Broward Boulevard
Suite 1110
Fort Lauderdale, FL 33301-3535

Hermelee & Geffin, LLC
c/o Alan G Geffin, Esq
101 NE 3 Ave #1110
Ft Lauderdale, FL 33301-1169

JPMorgan Chase Bank, National Association
Greenspoon Marder P.A
c/o Tennille M. Shipwash, Esquire
Trade Center South, Suite 700
100 W. Cypress Creek Road
Ft. Lauderdale, FL 33309-2181

Miami Dade County Tax Collector (Windley)
c/o Miami Dade Bankruptcy Unit
140 West Flagler St #1403
Miami, FL 33130-1561

Wells Fargo Bank, NA.
c/o Whitney Groff
3575 Piedmont Rd NE #500
Atlanta, GA 30305-1623

#44- JPL Investments Corp.
Ocean Bank/c/o Ivan Castaneda
780 NW 42 Ave #411
Miami FL 33126-5536

#83889-TC Tampa 1, LLC
PO Box 3167
Tampa FL 33601-3167

BB&T Bankruptcy
PO Box 1847 Wilson NC 27894

Branch B And T
Po Box 2306
Wilson, NC 27894-2306

Brooks & Alayan
4551 Ponce De Leon Blvd.
Coral Gables, FL 33146-1832

Capital Bank
599 9th Street, N, Ste. 101
Naples, FL 34102-5624

Chase Corporation
10790 Rancho Bernardo Rd
San Diego, CA 92127-5705

Chase Records Center
Mail Code LA4-5555
700 Kansas Lane, Monroe, LA 71203

Citibank, N.A.
701 East 60th Street North
Sioux Falls, SD 57104-0493

Citibusiness Mastercard
P.O. Box 183071
Columbus, OH 43218-3071

DAVID BEEM
2615 Fairway Dr
Homestead, FL 33035-1173

David Beem
C/O Max Goldfarb, Esq.
19 W Flagler St
Miami, FL 33130-4400

ELAVON, INC.
7300 Champman Highway
Knoxville, TN 37920-6612

Estate of Gary Brooks
c/o Jeffrey S. Berlowitz, Esq.
201 Alhambra Circle, 11th Floor
Coral Gables, FL 33134-5107

FLORIDA DEPT OF REVENUE
BANKRUPTCY UNIT
PO BOX 6668
TALLAHASSEE, FL 32314-6668

Floors To Doors, Inc
Drew M. Dillworth as Ch 7 Trustee
c/o Zack B. Shelomith
2699 Stirling Rd #C401
Ft. Lauderdale, FL 33312-6598

Floors To Doors, Inc
c/o Drew M. Dillworth as Ch 7 Trustee
150 W Flagler Street Ste 2200
Miami, FL 33130-1545

Hermelee & Geffin LLC
10 NE 3 Ave #1110
Ft Lauderdale FL  33301
ATTN: Alan G Geffin

Lenore Ferguson Estate
585 S.E. 25th Lane
Homestead, FL 33033-5232

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

RECOVERY LEGAL DIVISION
P.O. Box 9599
Knoxville, TN 37940-0599

The Home Depot/cbna
Po Box 6497
Sioux Falls, SD 57117-6497

Treva Bass Trust
128 N.W. 21st Street
Homestead, FL 33030-3229

U.S. Small Business Administration
14925 Kingsport Road
Fort Worth, TX 76155-2243

U.S. Small Business Administration
409 3rd Street, S.W.
Washington, DC 20416-0005


Wells Fargo Bank, N.A.
Business Direct Division
P.O.Box 29482
Phoenix, AZ 85038-9482

(p)WELLS FARGO BANK NA
WELLS FARGO HOME MORTGAGE AMERICAS SERVICING
ATTN BANKRUPTCY DEPT MAC X7801-014
3476 STATEVIEW BLVD
FORT MILL SC 29715-7203

miami dade county tax collector (windley)
140 west flagler street, suite 1403
miami, florida 33130-1561


David Beem
c/o Jeffrey A. Norkin, Esq.
520 SE 5 Ave #2303
Ft. Lauderdale, FL 33301-2958

David Marshall Brown
600 S.W. 4th Avenue
Fort Lauderdale, FL 33315-1012

Gary Allan Ferguson
28951 S.W. 175th Avenue
Homestead, FL 33030-2577


Helen S. Bell
250B Olmstead Blvd
Pinehurst, NC 28374-6007

James B Miller Esq
19 W Flagler St #416
Miami, FL 33130-4419

Joseph Whitney
200 NE 2nd Dr.
Homestead, FL 33030-6119


Kim Ferguson
28951 SW 175 Ave
Homestead, FL 33030-2577


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Wells Fargo Home Mortgag
8480 Stagecoach Cir
Frederick, MD 21701


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Miami

End of Label Matrix
Mailable recipients    42
Bypassed recipients     1
Total                  43

Label Matrix for local noticing
113C-1
Case 13-23732-LMI
Southern District of Florida
Miami
Tue Jun 11 14:10:47 EDT 2013

1st National Bank Of S
1550 N Krome Ave
Homestead, FL 33030-3233

Advanta Bk
Welsh and McKean Roads
Po Box 844
Spring House, PA 19477-0844

Bank Of America
4060 Ogletown/Stanton Rd
Newark, DE 19713

Bank Of America
Attn: Bankruptcy NC4-105-0314
Po Box 26012
Greensboro, NC 27420-6012

Chrysler Financial/TD Auto Finance
Attn: Bankruptcy Dept
Po Box 551080
Jacksonville, FL 32255-1080

Citibank Usa
Citicorp Credit Services/Attn:Centralize
Po Box 20507
Kansas City, MO 64195-0507

Everhome Mortgage Co/Ever Bank
Attn: Bankruptcy Department
301 West Bay Street
Jacksonville, FL 32202-5184

Expo/cbsd
Citicards Private Label-Bankruptcy
Po Box 20483
Kansas City, MO 64195-0483

GECRB/BrandsMart
Attention: Bankruptcy
Po Box 103104
Roswell, GA 30076-9104

GECRB/JC Penny
Attention:  Bankruptcy
Po Box 103104
Roswell, GA 30076-9104

Gecrb/city Furniture
C/o Po Box 965036
Orlando, FL 32896-0001

IRS
PO Box 7346
Philadelphia, PA 19101-7346

Keys Gate Community Association, Inc.
c/o Hector Oliver, Esq.
POB 415848
Miami Beach, FL 33141-7848

Midland Funding
8875 Aero Dr Ste 200
San Diego, CA 92123-2255

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Region/ams
Po Box 216
Birmingham, AL 35201-0216

Ronald R Wolfe & Associates, P.L.
POB 25018
Tampa, FL 33622-5018

Sears/cbna
Po Box 6282
Sioux Falls, SD 57117-6282

Wachovia Bank Vasf/Wells Fargo
Po Box 31557
Mac B6955-01b
Billings, MT 59107-1557

Wells Fargo Bank Nv Na
Attn: Deposits Bankruptcy MAC# P610
Po Box 3908
Portland, OR 97208-3908

(p)WELLS FARGO BANK NA
WELLS FARGO HOME MORTGAGE AMERICAS SERVICING
ATTN BANKRUPTCY DEPT MAC X7801-014
3476 STATEVIEW BLVD
FORT MILL SC 29715-7203

David Beem
2615 Pairways Drive
Homestead, FL 33035-1173

Nancy K. Neidich
www.ch13herkert.com
POB 279806
Miramar, FL 33027-9806

Richard H Simonson Esq
4901 NW 17 Way #301
Fort Lauderdale, FL 33309-3772

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Wells Fargo Hm Mortgag
8480 Stagecoach Cir
Frederick, MD 21701

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

End of Label Matrix
Mailable recipients    24
Bypassed recipients     1
Total                  25

EXHIBIT
"A"

# PURCHASE AND SALE AGREEMENT

This is an Agreement ("Agreement"), dated as of the date specified below, by and between Gary Ferguson and Kim Ferguson, husband and wife as to an undivided one-half interest and David Beem as to an undivided one-half interest ("Seller"), and Hightop Investments, LLC, a Florida limited liability company ("Buyer").

1.  **Sale of Property.** Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller upon the terms and conditions set forth below, certain land in Dade County, Florida, (the "Real Property"), legally described on Exhibit A attached hereto and designated on the site plan attached hereto as Exhibit B(specifically property folio number: 10-7813-017-0040 only), together with all improvements located thereon and to the extent assignable, all tenements, hereditaments and appurtenances thereto and all development and other rights related to the Real Property, including without limitation:

    (i)   all agreements, leases, contracts, covenants, easements and restrictions related to or benefiting the Real Property and any and all rights of Seller thereunder, including development rights, air rights, water and well rights, density (lot coverage) rights, and drainage rights;

    (ii)  all approvals, permits, and applications with or from governmental authorities related to or benefiting the Real Property; and

    (iii) to the extent they are in seller's possession, all documents and work product of all professionals in connection with the Real Property, if any, including all environmental studies and water samplings, all soil or engineering tests, and all construction, engineering, architectural, landscaping, and other plans, drawings, specifications, surveys, maps, site plans, plats, and other graphics related to development of the Real Property.

    *All of the foregoing are hereinafter collectively referred to as the "Property."*

2.  **Purchase Price.** Subject to the adjustments permitted or required pursuant to this Agreement, Buyer shall pay to Seller a total purchase price of Two Hundred Forty-Nine Thousand Dollars ($249,000) for the Property. The purchase price shall be payable at Closing (as hereinafter defined) by wire transfer, cashier's or official check.

3.  **Earnest Money Deposit.** Within five (5) business days after the execution of this Agreement by Buyer and Seller, Buyer shall deposit with Carey, O'Malley, Whitaker & Mueller, PA, 712 S. Oregon Avenue, Tampa, FL 33606-2543 ("Escrow Agent") the sum of Five Thousand Dollars ($5,000). The above deposit, together with any additional deposits (if any) are hereinafter referred to as the "Deposit." The Deposit shall be placed in an interest bearing trust account and shall be held in escrow until:

    (i)   the Deposit, together with interest accrued thereon, is returned to Buyer pursuant to the provisions of this Agreement;

    (ii)  the Deposit, together with interest accrued thereon, is delivered to Seller pursuant to the provisions of this Agreement; or

    (iii) Closing, in which case the Deposit, together with interest accrued thereon, shall be applied towards the purchase price for the Property.

4. **Inspection Period.**   Buyer shall at all reasonable times from the Effective Date (as hereinafter defined) of this Agreement until Closing (or until this Agreement is terminated prior to Closing), have access to the Property for itself, its agents and contractors for the purpose of conducting all such inspections, environmental reports, surveys, soil tests, drainage and percolation tests, and general collection of engineering data, as Buyer may deem necessary.   Buyer shall have Ninety (90) days from the Effective Date (the "Inspection Period") to evaluate the feasibility of Buyer's purchase and ultimate development of the Property.   Within ten (10) days after the Effective Date, Seller shall deliver to Buyer copies of all materials identified in Paragraph 1(iii).   If, on or before the expiration of the Inspection Period, Buyer notifies Seller that Buyer has determined, at Buyer's option and in Buyer's sole, absolute and complete discretion, that its purchase and ultimate development of the Property, for any reason whatsoever (regardless of the results of such inspections, tests, etc.), is not feasible and that Buyer therefore desires to terminate this Agreement, the Deposit and all interest earned thereon shall be returned to Buyer, Buyer shall deliver to Seller, at Seller's request, the results of Buyer's studies and investigations with respect to the Property, this Agreement shall terminate, and Buyer and Seller shall be relieved of any further liability or obligation hereunder except for the Inspection Indemnity described in Paragraph 23 and the Broker Indemnity described in Paragraph 27 below. Upon three (3) days' written notice prior to the expiration of the Inspection Period, Buyer shall have the right to extend the Inspection Period for 3 consecutive Thirty (30) day periods. The first thirty day extension of the Inspection Period will require no additional escrow deposit.  However, two additional thirty day extensions for the Inspection Period will be granted upon payment of an additional $2,500 in escrow for each extension. Said additional fees will be waived if extension is needed to obtain proper zoning on adjacent West parcel. On or before the expiration of the Inspection Period Buyer shall deposit an additional $5000 in escrow subject to the provisions of Paragraph 3.

5. **Permit Contingency Period.**   Buyer shall have from the expiration of the Inspection Period as defined in Paragraph 4 hereof, One Hundred Eighty (180) days (the "Permit Contingency Period") to secure all necessary government approvals, including but not limited to all building permits, demolition permits and site plan approvals for Buyer's intended use and development.   Deposits shall be "at risk" subject only to receipt of all necessary government approvals and building permits. Upon three (3) days' written notice to Seller prior to the expiration of the Permit Contingency Period, Buyer shall have the right to extend the Permit Contingency Period for 3 consecutive Thirty (30) day period. Buyer shall place an additional Five Thousand Dollars ($5,000) in escrow upon said written notice for each 30 day extension.

6. **Closing.**  Closing (the "Closing") shall take place at the offices of Escrow Agent, in Tampa, Florida, or at such other location as Buyer and Seller agree on the date which will be no later than Thirty (30) days following the expiration of the Permit Contingency Period unless otherwise extended by mutual agreement between Buyer and Seller in writing, at which time Escrow Agent shall accept tender of the deed for recording and tender of the purchase price balance for delivery to Seller.

7. **Deed.**  Seller shall convey marketable fee simple title to the Property to or at the direction of Buyer by special warranty deed free and clear of all liens and encumbrances, except as hereinafter provided.   At Closing, Seller shall deliver to Buyer and Escrow Agent its affidavit in form sufficient for the purpose of deleting the standard exceptions for construction liens and claims of parties in possession from the title policy hereinafter described.

8. **Easements.**  Intentionally Deleted.

9. **Title Insurance.**  Within ten (10) days of the receipt of Lender's existing title insurance policy, Buyer shall obtain a written commitment issued by a nationally recognized title insurance underwriter reasonably acceptable to Buyer (the "Company") binding the Company to insure marketable title to the Property in Buyer subject only to such exceptions that do not render title to the Real Property unmarketable or interfere with the development of the Real Property (the "Permitted Exceptions") by its Extended Owners Title Insurance Policy, upon recording of the Special

Warranty Deed (the "Title Binder"). The Title Binder shall be accompanied by legible copies of all exceptions noted on Schedule B of the Title Binder. If Seller's existing title insurance policy is not received by Buyer within five (5) days of the Effective Date, all inspection periods (as described in Paragraph 4, Paragraph 5 and Paragraph 6) shall be extended day-for-day by the amount of time elapsed between Buyer's receipt of the written commitment and the delivery deadline.

10.  **Survey.**  Buyer may, at Buyer's expense, obtain a current survey of the Property (the "Survey") prepared and certified by a registered Florida land surveyor. If the Survey reveals (i) any encroachments upon or from the Real Property or on or between any building set back line or property line, (ii) voids or lapses in the legal description of the Real Property, (iii) slivers, strips, gores or vacancies contained in the Real Property, or (iv) any other matter that reasonably causes the Title Company to refuse to delete the Standard Exceptions to an owner's title insurance policy for matters of the Survey and unrecorded easements to the Title Binder (provided, however, there may be specific exceptions for matters of survey as are acceptable to Buyer), such defect shall be treated in the same manner as a title defect under Paragraph 11 below.

11.  **Defects in Title.**  Within thirty (30) days after Buyer receives both the Title Binder and Survey, Buyer shall notify Seller of any objections to title revealed in the Title Binder or Survey which are different from the Permitted Exceptions. If Buyer fails to so notify Seller in writing of its objections to title to the Property, title to the Property shall be deemed to have been approved by Buyer. If Seller's title to the Property is not shown by the Title Binder or the Survey to be good and marketable without exception other than as specified in Paragraph 8 above, Seller shall take prompt and effective measures to make the title good and marketable, and shall have a period of sixty (60) days after receipt of notice thereof to do so. If Seller is unable to make the title good and marketable without exception other than as specified in Paragraph 8 above within such period, Buyer may at its option: (i) terminate this Agreement, or (ii) accept a conveyance of title to the Property in its existing condition without reduction of the Purchase Price. If Buyer elects to terminate this Agreement because of such failure of Seller to render title good and marketable, the Deposit, together with any interest accrued thereon, shall be returned to Buyer and thereafter the parties shall have no further rights or obligations hereunder or to each other except as set forth in Paragraph 4.

12.  **Closing Costs.**  Buyer and Seller will each pay their own attorneys' fees and costs. In addition,

    (a)  Buyer shall pay the following costs and expenses in connection with the Closing:

        (i)  the costs of recording the Special Warranty Deed;

        (ii)  the cost of the Survey and the additional premium to obtain extended owner's title insurance coverage.

    (b)  Seller shall pay the following costs and expenses in connection with the Closing:

        (i)  all documentary stamps required by law to be affixed to the special Warranty Deed;

    (c)  Taxes and assessments for the year of the Closing shall be prorated to the date of Closing. If the Closing occurs before the tax rate is fixed for the then current year, the apportionment of taxes shall be upon the basis of the tax rate of the preceding year applied to the latest assessed valuation. Any difference between such estimated amount and the final amount will be paid to the applicable party within thirty (30) days after the tax bill is tendered.

13.  **Seller's Representations and Additional Covenants.**  Seller represents, warrants, and agrees that each of the following is true and correct on the date of this Agreement and shall be true and correct on the date of Closing, and

it shall be a condition of Buyer's obligation to close the purchase of the Property that each of the following is true and correct on the date of Closing:

(a)    Seller is authorized to execute this Agreement and to fulfill its obligations under this Agreement.

(b)    Seller has no knowledge of any pending or threatened condemnation or similar proceeding or assessments affecting the Property or any portion thereof, nor has Seller knowledge that any such action is presently contemplated.

(c)    There are no current leases.

(d)    Seller has no knowledge of any action by adjacent landowners, or natural or artificial conditions upon the Property, that would prevent, limit, impede, or render materially more costly Buyer's use of the Property.

(e)    Seller discloses that there is a complex and protracted litigation between Gary Ferguson and David Beem. Gary Ferguson has filed for Bankruptcy protection in the Southern District of Florida under Case No. 12-22368-LMI and the contract must be approved by the Bankruptcy Court. Seller agrees to seek and procure the Bankruptcy Courts approval within the "Inspection Period." The property is also in foreclosure.

(f)    Seller has no knowledge of any significant adverse fact or condition relating to the Property that has not been specifically disclosed by Seller to Buy.

(g)    Seller has no knowledge of any uncured violations of federal, state, or municipal laws, ordinances, orders, regulations or requirements affecting any portion of the Property.

(h)    Seller has no knowledge of any episode of environmental discharge or spill with respect to the Property or any lands abutting the Property, except as disclosed in any environmental studies delivered by Seller to Buyer.

(i)    Seller has not entered into any unrecorded contracts, options, leases, easements, conveyances or other agreements affecting the use, title, occupancy or development of and rights inhering in the Property, and, to Seller's knowledge without separate investigation, there are no claims of any additional third parties affecting the use, title, occupancy or development of the Property.

(j)    As of the Closing date, Seller shall cause to be paid all services, materials, and labor furnished with respect to the Real Estate prior to the Closing date, and that to Seller's knowledge there are no mechanics', materialmens' or professional services liens (or rights to claim any such liens) against the Real Property that have not been disclosed in writing by Seller to Buyer.

(k)    Except for those items to be prorated as hereinafter set forth, Seller shall be solely liable for the payment of all costs and expenses, liabilities, obligations, and claims arising out of Seller's ownership and operation of the Property prior to Closing; and Seller hereby agrees to defend, indemnify and hold Buyer harmless therefrom.

(l)    That Seller has no notice or any knowledge of any actual or threatened settlement, earth movement, termite infestation or other damage affecting the Real Estate, or any reduction or curtailment of any utility service now available to the Real Estate.

That the representations, warranties, indemnities, and covenants contained in this Article shall survive the Closing date and run in favor of and benefit Buyer and its successors and assigns. Seller hereby indemnifies and holds Buyer harmless from any losses, costs, expenses, obligations and attorneys' fees incurred should a claim, demand, action or cause of action be instituted, made or taken resulting from a breach of the representations or warranties contained in this Article, and these indemnities shall survive the Closing date.

For the purpose of this paragraph, "knowledge" is deemed to be the actual present knowledge of Seller's majority owner (or the principals thereof), without investigation. The representations, warranties and agreements set forth in this paragraph shall survive Closing.

14.  **Default.**

(a)   If the sale and purchase of the Property is not closed because of default of Buyer, and if Seller is not in default under this Agreement, at the option of Seller, the Deposit, together with all interest accrued thereon, shall be delivered to Seller, and this shall be Seller's sole remedy for Buyer's default hereunder (except for Buyer's obligations under the Inspection Indemnity described in Paragraph 23 and Broker Indemnity described in Paragraph 27 below), it being understood and agreed that Seller's damages in the event of Buyer's default cannot be ascertained with reasonable certainty at this time.

(b)   If the sale and purchase of the Property is not closed because of default of Seller and if Buyer is not in default under this Agreement, at the option of Buyer, (i) the Deposit, together with all interest accrued thereon, shall be returned to Buyer upon demand together with actual out-of-pocket expenses arising out of Seller's default, or (ii) Buyer may seek to enforce specific performance of Seller's obligations hereunder, and these shall be Buyer's sole remedies for Seller's default hereunder.

15.  **Escrow Agent.** In the event of doubt as to its duties or liabilities under this provisions of this Agreement, Escrow Agent may, in its sole discretion, continue to hold the Deposit until the parties mutually agree to the disbursement thereof, or until a judgment of a court of competent jurisdiction shall determine the rights of the parties thereto, or it may deposit all the monies then held pursuant to this Agreement with the Clerk of the Court for Hillsborough County, Florida, and upon notifying all parties concerned by such action, all liability on the part of the Escrow Agent shall fully terminate except to the extent of accounting for any monies theretofore delivered out of the escrow. In the event of any suit between Buyer and Seller wherein Escrow Agent is made a party by virtue of acting as such Escrow Agent hereunder, or in the event of any suit wherein Escrow Agent interpleads the subject matter of this escrow, Escrow Agent shall be entitled to recover reasonable attorneys' fees and costs incurred, said fees and costs to be charged and assessed as court costs in favor of the prevailing party. All parties agree that Escrow Agent shall not be liable to any party or person whomsoever for misdelivery to Buyer or Seller of monies subject to this escrow, unless such misdelivery shall be due to willful breach of this Agreement or gross negligence on the part of Escrow Agent.

16.  **Notices.** Any notice required or permitted to be given by the terms of this Agreement or under any applicable law by either party shall be in writing and shall be either hand delivered or sent by certified or registered mail, postage prepaid, return receipt requested.  Email addresses provided below are for convenience only and are not valid for delivery of Notices.  Such written notice shall be addressed as follows:

As to Buyer:

Hightop Investments, LLC
Attn: Dillon Tidwell
255 Linden St., Suite 210
Fort Collins, CO  80524
Phone: (970) 282-1038
Email:  DTidwell@tatumre.com

With copies to:

Rod Fields
Rodney S. Fields, Jr. P.A.
3905 San Rafael St
Tampa, FL  33629
Phone: 813-739-3090
Email:  envirolaww@aol.com

As to Seller: ~~Gary & Kim Ferguson~~ *KF GF*
*KF GF* Lenore Ferguson Estate

Steven Losher
59 NE 15th Street
Homestead, FL 33030
305-247-2522
Phone:
Email: Wellarandlosher@aol.com

With copies to:

_____
_____
_____
Phone:
Email:

As to Escrow Agent:

Drew O' Malley
Carey, O'Malley, Whitaker & Mueller, PA
712 S. Oregon Avenue
Tampa, FL  33606-2543
Phone: 813-250-0577
Email:  aomalley@cowmpa.com

Any party may, by subsequent written notice, designate a different address or party for receiving notice.  Notice shall be deemed to have been given when hand delivered two (2) days after being deposited in the U.S. certified mail, properly addressed and with the full first class postage affixed.

17.  **Seller Cooperation.**  In connection with obtaining governmental approvals for Buyer's intended use of the Property, Seller will designate a representative of Buyer as it's agent for filing applications for approvals so long as no modification of the land use or zoning is made without Seller's written approval or Seller's actual signature on the applicable applications.

18. **Attorneys' Fees.** In the event it becomes necessary for either party to enforce the terms of this Agreement, the prevailing party shall be entitled, in addition to such damages or other relief as may be granted, to recover reasonable attorneys' fees and costs, such attorneys' fees to include those incurred on any appeal.

19. **Condemnation.** Should any governmental entity having the power of condemnation initiate eminent domain proceedings prior to the time of Closing hereunder to condemn any portion of or any interest in the Real Property, Buyer, at its sole option, may elect to:

    (a)    Terminate Buyer's obligation to purchase the Property by giving written notice to Seller within ten (10) days after notification and receive back the Deposit, together with all interest accrued thereon; or

    (b)    Complete the purchase of the Property in accordance with the terms of this Agreement without diminution of the purchase price or change of the terms hereof, in which event at Closing Seller shall assign to Buyer all sums to be awarded or to be awarded in connection with said condemnation; Seller shall not negotiate a settlement of any pending or threatened eminent domain proceeding without the prior written consent of Buyer.

20. **Further Assurances.** From and after the Closing date, each party, upon demand, will execute and deliver any and all written further assurances that are necessary to evidence, complete, perfect, or any combination thereof, the transactions contemplated by this Agreement, so long as no further assurance operates to impose any new or additional liability upon any party. Seller shall cooperate with Buyer at no cost to Seller, and execute such consents and approvals as may be necessary, in Buyer's efforts to obtain such permitting, approvals, variances, waivers, use permits and zoning reclassification as Buyer may deem reasonably necessary for Buyer's intended development of the Property. The parties will so perform all other acts that are necessary for any such purpose, so long as no new or additional liabilities are incurred that are not contemplated by this Agreement.

21. **Effective Date.** The "Effective Date" as used herein shall be the date on which the last of Buyer and Seller signs this Agreement.

22. **Miscellaneous.** This Agreement may be modified only by an instrument in writing signed by both parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. The waiver of any breach of any term or condition hereof shall not be deemed a waiver of any other or subsequent breach, whether of like or of different nature. The captions contained herein are only for the convenience of the parties and do not modify, amplify or give full notice of any of the terms, covenants and conditions of any article, paragraph, clause or provision of this Agreement. This agreement shall be interpreted and construed in accordance with the laws of the State of Florida. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of the remainder of this Agreement. Whenever used herein, the singular form shall include the plural and vice versa, and the use of any gender shall include all genders, as appropriate.

23. **Inspection Indemnity.** Notwithstanding anything contained in this Agreement, Buyer shall (i) promptly pay or cause to be removed any liens filed against the Property as a result of any actions taken by or on behalf of Buyer; (ii) promptly repair and restore the Property to substantially the same condition existing immediately prior to the conduct of Buyer's entry thereon; and (iii) shall indemnify, defend and hold Seller harmless from and against all claims, damages or losses incurred to the Property or anyone on the Property as a result of the actions taken by Buyer, any of its agents, representatives or contractors, or any person performing the feasibility activity or other activities on Buyer's behalf; these obligations collectively are referred to herein as the "Inspection Indemnity." The terms of this Inspection Indemnity shall survive the Closing and any termination of this Agreement.

24. **Disclaimer.** Except as otherwise expressly provided in this Agreement, Buyer acknowledges that it has examined the Property and is buying the Property "As Is," without warranty or representation of any kind whatsoever, express or implied, including, without limitation, any implied warranty of fitness of the Property for a particular purpose, whether by Seller, or by an agent, broker, employee or other representative of Seller. All understandings and agreements heretofore between the parties are hereby merged in this Agreement, which alone shall fully and completely express the parties' agreement. Buyer acknowledges that it shall have had by Closing an adequate opportunity to inspect the Property and to make such legal, factual and other inquiries and investigations as Buyer deems necessary, desirable or appropriate with respect to the Property.

25. **Recording This Agreement.** Buyer shall not record this Agreement or any memorandum hereof. In the event that Buyer shall breach this paragraph, Seller shall have the right to terminate this Agreement.

26. **Entire Agreement.** This Agreement and the exhibits attached hereto contain the entire agreement between the parties. There are no promises, agreements, conditions, undertakings, warranties or representations, oral, written, express or implied, between the parties other than as herein set forth.

27. **Brokerage.** Buyer and Seller each represent and warrant to the other that with the exception of Century 21 Town and Country and Buy Florida Real Estate ("Brokers"), neither has had any dealings with any person, firm, broker or finder in connection with the negotiations of this Agreement and/or the consummation of the purchase and sale contemplated hereby and no broker or other person, firm or entity is entitled to any commission or finder's fee in connection with this transaction. Seller shall pay at Closing, and only in the event of Closing, a commission in the amount of 6% of Purchase Price to be split (3% to Century 21 Town and Country Realty and 3% Buy Florida Real Estate). Buyer and Seller do each hereby indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liabilities for compensation, commission or charge which may be claimed by any broker, finder or other similar party by reason of any actions of the indemnifying party, and these obligations are referred to herein collectively as the "Broker Indemnity."

28. **Assignment.** Buyer may assign or transfer any of its rights under this Agreement upon written notice to Seller.

29. **Confidentiality.** Buyer and Seller hereby agree that they shall each hold in strict confidence all terms and conditions of this Agreement, except that Buyer and Seller may each disclose such terms and conditions to their directors, officers, employees and attorneys, provided, however, that such party shall notify all such persons to whom such information is disclosed that the same must be kept confidential in accordance with the terms of this paragraph. In the course of performing its feasibility studies, Buyer may disclose to third parties the fact that it has entered into a contract to purchase the Property in order to obtain information regarding any or all of the Property from any third party, and such disclosure shall not be deemed to be in violation of this paragraph.

30. **Time is of the Essence.** Time is of the essence with respect to this Agreement.

31. **Like Kind Exchange.** Buyer or Seller may elect to acquire or sell the Property in a manner which will qualify for treatment as a like kind exchange under Section 1031 of the Internal Revenue Code. In the event either party makes such an election, the other party will cooperate in any reasonable manner and at no expense to the other party to allow the exchanging party to effect such an exchange; provided, however, that in no event shall (i) either party be required to take title to any other property to facilitate the tax free exchange, or (ii) the exchange activity delay the Closing. It is understood and agreed that if either party elects to effect such an exchange, funds will be transferred to a qualified "Exchange Agent" as designated by the exchanging party.

32. **Cost recovery fees.** In the event it is necessary for the Buyers to obtain any rezoning, site plan approval or other land use approvals from the City of Homestead, the City requires cost recovery from the applicant for such matters. If the Buyer terminates the agreement and does not close, the City of Homestead may attempt to lien the property in the event the Buyer does not pay the cost recovery items to the City of Homestead. In the event the contract is terminated and any applications have been made to the City of Homestead, the escrow deposit will not be released until such time as the City of Homestead has issued its acknowledgement that all cost recovery items have been paid with respect to any such applications.

33. **Sellers right to continue to market property and accept backup contract.** The Sellers may continue to market the property and negotiate and accept backup offers.

34. Lenore Ferguson Trust has filed a foreclosure action in Dade County Circuit Court against the Sellers and filed a lis Pendens against the subject property. Seller agrees to gain consent of this contract from the Lenore Ferguson Trust in the form of Exhibit "D" attached here to.

35. **Radon Disclosure.** Radon is a naturally occurring radioactive gas that when accumulated in a building in sufficient quantities may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon or radon testing may be obtained from your County Public Health unit.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers on the date(s) set forth below.

WITNESSES AS TO SELLER: (Fergusons only)

SELLER:

By: Gary & KIM Ferguson & David Beem
Its:

Dated:

WITNESS TO DAVID BEEM
Joseph Whitney

WITNESSES AS TO BUYER:

Bob Moslin

BUYER:
Hightop Investments, LLC
a Florida limited liability company

By:
Printed Name: Hamilton E. Hunt
Its: President

Dated: 9/21/12

**EXHIBIT A**



**ORDERED in the Southern District of Florida on October 18, 2012.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No. 12-22368-LMI
                                                Chapter 11
GARY ALLAN FERGUSON,

___  Debtor-In-Possession      /

**ORDER GRANTING:**
**DEBTOR'S AMENDED MOTION FOR COURT APPROVAL OF SALE OF PROPERTY (DE#131)**

THIS CAUSE came on before the Court on the 15th day of October, 2012, at 1:30 p.m., for

hearing on the Debtor's *Amended Motion For Court Approval Of Sale Of Property* ("Motion")

[DE#121], on notice to all creditors and interested parties, and the Court, being familiar with

the record, heard argument of counsel to the Debtors, counsel to the Office of the United

States Trustee, and respective counsel for the creditors, David Beem and Brooks & Alayon, LLP,

and finding good cause shown, does hereby

ORDER and ADJUDGE that:

Exhibit B

1.      The Motion is GRANTED, subject to the additional terms set forth herein below, and the Purchase And Sale Agreement ("Contract") attached to the Motion is also approved.

2.      The real property ("Real Property") identified on the attached Exhibit A will be sold subject to the terms and conditions in the Contract attached to the Motion; and all of the Debtor's, his spouse's (Kim Ferguson's) (Debtor and his spouse, Kim Ferguson, are hereinafter referred to as the "Fergusons") and David Beem's right, title and interest in said Real Property shall be sold to Hightop Investments, LLC pursuant to the Contract. Sellers are authorized and directed to execute all deed(s), bill(s) of sale and other documents standard in the industry for the closing on the sale contemplated by the Contract.

3.      At the successful closing on the sale of the Real Property, the closing agent is authorized to pay all standard closing costs, Miami-Dade Tax Collector property taxes, and the sale commission(s). Additionally, the closing agent shall pay the principal and interest owed to the estate of Lenore Ferguson (the "Lenore Ferguson Estate") pursuant to that certain mortgage in favor of Lenore Ferguson. If the matter of the attorney's fees and costs sought by Lenore Ferguson in the foreclosure suit has not been resolved prior to the closing, those funds shall be held in escrow (in trust) by Debtor's counsel until the earlier of a ruling by this Court as to the amount of and entitlement to, said attorney's fees and costs, or there is an agreement between the Sellers and the Lenore Ferguson Estate as to those issues.

4.    After payment as set forth above and, if necessary, reservation of the disputed

amount of attorney fees and costs, the balance of the sale proceeds shall be divided

equally between David Beem and the Fergusons; with the caveat that the balance of

proceeds going to the Fergusons ("Ferguson Proceeds") shall be held in the Debtor's

attorney's trust account for this Court to decide as to whom these proceeds belong,

*i.e.* -- Brooks & Alayon, LLP, the Fergusons, or to the Debtor's Estate.

5.    This Court shall retain sole and exclusive jurisdiction over the Contract, this

Order and any disputes or issues arising out of or relating thereto.

6.    All outstanding United States Trustee fees, including applicable fees based on

disbursements made to secured creditors, shall be paid from the proceeds of the

sale at closing.   The Debtor shall attach the closing statement to the monthly

operating report.

7.    The Court will hold a status conference hearing on the progress of the Sale

contemplated herein on December 5th, 2012 at 10:30 a.m., in Courtroom #1409, 14th

Floor, The Claude Pepper Federal Building, 51 SW 1st Avenue, Miami, FL 33130.

### ###

Submitted by:

JAMES B. MILLER, ESQ.

Copies to (via ecf in pdf format):

- Ana-Laura Diaz on behalf of Creditor Wells Fargo Bank, NA.
  adiaz@aclawllp.com, FLECF@aclawllp.com

  James B Miller on behalf of Debtor Gary Ferguson
  bkcmiami@gmail.com

  Jeffrey A Norkin on behalf of Creditor David Beem

jeff@norkinlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ariel Rodriguez on behalf of U.S. Trustee Office of the US Trustee
ariel.rodriguez@usdoj.gov

Tennille M. Shipwash on behalf of Creditor JPMorgan Chase Bank, National
Association
tennille.Shipwash@gmlaw.com, Bankruptcy@gmlaw.com

(Attorney Miller shall file a certificate of service as to the service of this Order)

Legal Description

Property Folio Number:   10-7813-017-0040

Lots 4, 5and 6, E.F. BROOKERS ADDITION, a subdivision according to the Plat thereof, recorded in Plat Book 1 at Page 155 of the Public Records of Dade County;  Begin 462 feet East of the SW Corner of SE 1/4 of the NE1/4 of Section 13, Township 57 South, Range 38 East;  Thence East 12 feet; Thence North 165 feet; Thence West 12 feet; Thence South 165 feet to the point of beginning, less any part thereof used as public street; and West 36 feet of the East 66 feet of the South 145 feet of the S1/2 of SW 1/4 of the SE 1/4 of NE 1/4 of Section 13, Township 57 South, Range 38 East, less any part thereof used for purposes of a public street.



EXHIBIT
"A"



**ORDERED in the Southern District of Florida on May 21, 2013.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                    Case No. 12-22368-BKC-LMI

GARY ALLAN FERGUSON,                      Chapter 7

       Debtor.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**MOTION TO APPROVE CHARGING LIEN FOR ATTORNEY'S FEES AND COSTS**

This matter came before the Court on May 8, 2013 on the Motion of Genovese, Joblove

and Battista, P.A. ("GJB") to Approve Charging Lien for Attorney's Fees and Costs (the

"Motion to Approve") (ECF #262).  For the reasons set forth below, the total fees requested by

GJB are reduced by between $5,195.50 and $6,095.50 and the amount subject to the charging

lien is between $992.50 and $1,942.50.

GJB was bankruptcy counsel for creditor David Beem in this bankruptcy case. GJB

withdrew and filed a Notice of Attorney's Charging Lien by Genovese, Joblove, and Battista,

P.A. for Attorney's Fees and Costs (ECF #145). GJB subsequently filed the Motion to Approve

seeking to have the charging lien applied to Mr. Beem's share of proceeds from the sale of the

Mowry property.[1] At the hearing on the Motion to Approve, Mr. Beem, through current counsel,

argued that the charging lien should not be approved because (1) GJB overcharged for the work

it performed and, (2) the sale of the Mowry Property was not a result of GJB's representation of

Mr. Beem in this bankruptcy proceeding (i.e., the "fruits") and the charging lien should be

limited to the services rendered in connection with the sale of the Mowry property.

At the Court's request, GJB submitted a time entry history detailing its representation of

Mr. Beem in this bankruptcy case. The Court advised the parties that no expert testimony is

necessary to aid the Court in determining what fees are reasonable, either as to services or time

costs and that, upon review of the detailed time records, the Court would advise the parties

whether an evidentiary hearing was necessary. *See In Re Lickman*, 297 B.R. 162, 198 (M.D. Fla.

2003) ("The bankruptcy court need not consider expert testimony in determining the

reasonableness of attorney's fees"). The Court has reviewed the detailed time records, and

subject only to an issue regarding travel time (which, if not disputed does not require a further

hearing), the Court has determined that no evidentiary hearing is necessary.

In order to support a charging lien in Florida, the claiming attorney must demonstrate:

"(1) an express or implied contract between the attorney and client; (2) an express or implied

understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of

---

[1] The Motion to Approve defines the Mowry property as the "Property."

2

payment or a dispute as to the amount of fees; and (4) timely notice." *Daniel Mones, P.A. v. Smith*, 486 So.2d 559, 561 (Fla. 1986). Further Florida courts require proof of positive results from the underlying litigation because a charging lien only attaches to the "tangible fruits of the services" provided to the client. *Walia v. Hodgson Russ LLP*, 28 So.3d 987, 989 (Fla. 4th DCA 2010).

Having reviewed the detailed time records, the Court finds that there were several instances in which GJB spent too much time on a particular task, in one instance the client was double billed for the same task, and the most significant adjustment is that there was no reason to charge the client to have two attorneys from GJB attend the deposition of the Debtor. The Court did not adjust the time taken for the associate to prepare the partner for the deposition or for the partner to prepare, but the Court agrees with Mr. Beem that, especially in light of his request that the firm be sensitive to his financial limitations, the attendance by the GJB associate was unnecessary.

Further the Court finds that GJB is only entitled to a charging lien as to those services which actually related to the sale of the Mowry property, which amount is between $992.50 and $1,942.50, depending on the travel time issue addressed below. The bulk of the time entries have nothing to do with the Mowry property and cannot be said to be the "tangible fruits of the services" provided by GJB. The Court does not agree with GJB's argument that everything they did related to the Mowry property; indeed, most of what GJB did related to the Motion for Turnover and its withdrawal from the case.

There are two entries about which the Court has some questions. There are two instances in which Ms. Blye charged 4.0 hours to attend a hearing in Miami, when 2.0 hours would be appropriate (in the absence of travel time). The Court does not know whether Mr. Beem agreed

to pay for travel time but, since there does not appear to be travel time entries for the partners, the Court assumes there was no such agreement. If the client agreed to pay for travel time to the Court from Broward (even though GJB has an office in Miami), then, the fees should be reduced by $5,195.50 and the charging lien will attach to the sale proceeds of the Mowry Property in the amount of $1,942.50. However, if the client did not expressly agree to pay for travel time then the fees are to be reduced by $6,095.50 and the charging lien shall apply to $992.50 of the proceeds.

If there is a dispute regarding the propriety of charging for travel time, and either party believes it is necessary for this Court to conduct an evidentiary hearing on the travel time issue, then the Court will consider that issue at an evidentiary hearing to be separately scheduled. Alternatively the parties can do an agreed notice of filing of the retainer agreement, which agreement this Court will review. If there is such a dispute then the Debtor will hold the additional $950.00 in escrow pending conclusion of the Court's ruling on this issue. The balance of the closing fees from the sale of the Mowry property shall be paid to GJB and Mr. Beem consistent with this Order.

###

Copies furnished to:
Mariaelena Gayo-Guitian, Esq.
Jeffrey A. Norkin, Esq.

*Attorney Gayo-Guitian shall serve a copy of this order upon all interested parties and shall file a Certificate of Service of same with the Clerk of the Court.*



**ORDERED in the Southern District of Florida on May 21, 2013.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No. 12-22368-LMI
                                                Chapter 11
GARY ALLAN FERGUSON,

_____Debtor-In-Possession_____ /

**ORDER GRANTING: DEBTOR'S-IN-POSSESSION EMERGENCY MOTION TO: CLARIFY SALE OF REAL ESTATE; DEEM SALE TO BE A 363 SALE, WITH LIENS, INTERESTS AND ENCUMBRANCES ATTACHING TO THE PROCEEDS; AND DIRECTING OWNERS TO EXECUTE ALL NECESSARY AND REASONABLE DOCUMENTS TO CONCLUDE SALE (DE#258)**

This matter came on before the Court on May 8th, 2013 at 3:30 p.m., for hearing on the Debtor's-In-Possession, Gary Allan Ferguson, *Emergency Motion To: Clarify Sale Of Real Estate; Deem Sale To Be A 363 Sale, With Liens, Interests And Encumbrances Attaching To The Proceeds; And, Directing Owners To Execute All Necessary And Reasonable Documents*

1

*To Conclude Sale* ("Motion") [DE#258], on notice to all creditors and interested parties, and the Court, being familiar with record, noting entry of an earlier order (DE#173), heard argument of counsel, polled the Creditor, David Beem and his counsel (Jeffrey Norkin), Debtor's spouse, Kim Ferguson, and Debtor's counsel (James B. Miller), heard the representations and proffers by Debtor's counsel as to the requested relief as well, and finding good cause shown, does hereby

ORDER and ADJUDGE that:

1. The Motion is GRANTED.

2. Other than as clarified by this Order, this Court's earlier order (DE#173) remains in effect.

3. The sale of the real estate subject of the Motion with Folio Number 10-7813-017-0040 ("Subject Real Estate"), and the following legal description, shall go forward:

> Lots 4, 5 and 6, E.F. BROOKERS ADDITION, a subdivision according to the Plat thereof, recorded in Plat Book 1 at Page 155 of the Public Records of Dade County; Begin 462 feet East of the SW Corner of SE ¼ of the NE ¼ of Section 13, Township 57 South, Range 38 East; Thence East 12 feet; Thence North 165 feet; Thence West 12 feet; Thence South 165 feet to the point of beginning, less any part thereof used as public street; and West 36 feet of the East 66 feet of the South 145 feet of the S1/2 of SW ¼ of the SE ¼ of NE ¼ of Section 13, Township 57 South, Range 38 East, less any part thereof used for purposes of a public street.

4. Hightop Investments, LLC, (a Florida limited liability company) [hereinafter "HTI"], has offered to purchase the Subject Real Estate subject to the terms and conditions set forth in that certain Purchase And Sale Agreement ("Sale Agreement"), identified as Exhibit "A" to DE#131 and Exhibit "A" to the Motion for the sum of $249,000.00 (TWO-HUNDRED and FORTY-NINE THOUSAND DOLLARS).

5. The sale* of the Subject Real Property to HTI is approved in its entirety, and said sale (upon successful closing) shall be free and clear of all liens, interests and

---

\* The Purchase Agreement is approved pursuant to 11 U.S.C. Section 363(a), (f), (g), (h) and (m).

encumbrances† of the following, with said liens, interests and encumbrances attaching to the Sale Proceeds from the Closing on the Sale of the Subject Real Property:

   a. Two outstanding Miami-Dade County real estate tax certificates (#'s 17950 (2010 tax year) and 20147 (2011 tax year)) ["Tax Certificates"], along with the current outstanding taxes for the years 2012 and *pro rata* for 2013 [collectively, the "Tax Obligations"];

   b. That certain mortgage (Miami-Dade County O.R. Book 21793 at Page 1560) in favor of the Lenore Ferguson Trust and/or Lenore Ferguson [hereinafter the "LFT Mortgage"];

   c. That recorded Notice of *Lis Pendens* at O.R. Book 26831 at Page 754 in Case No. 09-30901CA32 in favor of Gary Ferguson [hereinafter the "GF Lis Pendens#1"];

   d. That Notice of *Lis Pendens* recorded October 17, 2009 at O.R. Book 25993 at Page 1169 in Case No. 07-34790CA20 [hereinafter "GF Lis Pendens#2"];

   e. That certain Final Judgment ["Beem Final Judgment"] entered against Gary Ferguson individually by David Beem and recorded at O.R. Book 27874 Page 2613, and a non-certified copy of said judgment at O.R. Book 27877 Page 2450;

   f. That Notice of Appeal in O.R. Book 27935 Page 4418 (Case No. 07-34790CA20) ["NOA#1"];

   g. That Notice of Appeal and Cross-Appeal recorded on December 23, 2010 at O.R. Book 27946 Page 1422 (Case No. 07-34790CA20) ["NOA#2"];

   h. That Notice of Filing Charging Lien by the law firm of Genovese Joblove & Battista against David Beem in this Bankruptcy Case at DE#145, for the sum of $34,025.18 ["Charging Lien"]; and,

---

† The sale is to be free and clear of all liens, interests and encumbrances, with the exceptions of all applicable laws, ordinances and governmental regulations, including but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations which affect the use and maintenance of the Real Property; as well as all restrictions, reservations, covenants, conditions, agreements, easements, limitations and other matters that appear of public records against the Real Property, excluding any mortgage liens, judgments, claim of liens or other title matters which can be satisfied by payment of a liquidated amount.

3

    i.   That uncertified recorded court order in favor of Kim Ferguson and against Beem in Case No. 07-34790 CA42 regarding assessing certain "costs", and recorded at Book 28516 Page 4519 ["Kim Order"].

6. HTI, after successful closing on the sale of the Subject Real Property, shall be deemed a good faith purchaser for value, and is entitled to 11 U.S.C. §363(m) and (n).

7. This Order shall be effective immediately upon entry as the Court finds good cause to waive the Rule 6004(h) fourteen (14) day waiting requirement.

8. Additionally, the Closing Agent is authorized and directed to pay at closing on the sale of the Subject Real Property:

    a.  The two outstanding Miami-Dade County real estate tax certificates (#'s 17950 (2010 tax year) and 20147 (2011 tax year)) ["Tax Certificates"], along with the current outstanding taxes for the years 2012 and *pro rata* for 2013;

    b.  All standard closing costs and fees, including real estate agent/broker commissions as contemplated in the contract;

    c.  The Principal and Interest only for the LFT Mortgage, with any disputed attorney fees (whatever sum is demanded by the LFT Mortgagee) to be held in escrow by Debtor's counsel in his trust account; *(Notwithstanding the foregoing, payment of the principal and interest to the LFT at closing is contingent upon a copy of the payoff letter, and a copy of the amortization schedule used to prepare the figures in the payoff letter, being provided to David Beem prior to closing. If these documents are not provided, then the principal and interest will be escrowed until the documents are provided, but the LFT still will be required to deliver a release of mortgage to the closing agent in order to consummate the sale.)*

    d.  The sum of $34,025.18 (for the Genovese Joblove & Battista, P.A. Charging Lien) shall also be deducted from the sum which David Beem would be entitled to receive at the closing and held in escrow with Debtor's counsel, pending further order of this Court; *(The Court, by separate order, has adjudicated the amount of the charging lien. Upon that order becoming*

4

*final, the proceeds the Court has found are not subject to the charging
lien are to be immediately released to David Beem.  Moreover, any such
payment shall be without prejudice to David Beem's claim that his
allocable portion of the mortgage debt should be reduced in relation to
the Debtor's allocable portion of the mortgage debt due to the
allegations that the Debtor caused the default, and shall be without
prejudice to the Debtor's right to dispute such allocation adjustment.)*

    e.  Pending further order of this Court, the sum which Kim Ferguson asserts she
is owed by virtue of that certain uncertified recorded court order in favor of
Kim Ferguson and against Beem in Case No. 07-34790 CA42 regarding
assessing certain "costs", and recorded at Book 28516 Page 4519, and this
sum shall be withheld from the Beem net proceeds. *(Kim Ferguson shall
have 14 days from the date of this order to file an explanation why she
is entitled to have these sums withheld from distribution to David
Beem.)*

    f.  The undisputed sum owing to Beem thereafter shall be disbursed to David
Beem;

    g.  The sum payable to Gary and Kim Ferguson, jointly and independent of the
Kim Order, shall also be paid to Debtor's counsel to be held in trust pending
further order of this Court.

9.  Furthermore, this sale shall be free and clear of any and all right, title and interest in
the Subject Real Property as to Beem and Kim and Gary Ferguson, in whatever
nature or form their interests may be in the Subject Real Property, after the
successful closing.

10. This Court retains sole and exclusive jurisdiction over the Purchase Agreement, this
Order, the earlier order (DE#173), the Parties to the Purchase Agreement, and any
disputes relating thereto or arising therefrom.

###

<u>Submitted by:</u>
James B. Miller, Esq.


<u>Copies to (via ecf in pdf format):</u>

5

-Jeffrey S. Berlowitz on behalf of Creditor Estate of Gary Brooks
jberlowitz@siegfriedlaw.com, mcabrera@siegfriedlaw.com

-Ana-Laura Diaz on behalf of Creditor Wells Fargo Bank, NA. aldiaz13@gmail.com

-Mariaelena Gayo-Guitian on behalf of Interested Party Genovese Joblove & Battista, P.A. mguitian@gjb-law.com, gjbecf@gjb-law.com; vlambdin@gjb-law.com; ktoland@gjb-law.com; chopkins@gjb-law.com

-James B Miller on behalf of Debtor Gary Ferguson bkcmiami@gmail.com

-Jeffrey A Norkin on behalf of Creditor David Beem jeff@norkinlaw.com

-Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

-Ariel Rodriguez on behalf of U.S. Trustee Office of the US Trustee
ariel.rodriguez@usdoj.gov

-Tennille M. Shipwash on behalf of Creditor JPMorgan Chase Bank, National Association
tennille.Shipwash@gmlaw.com, Bankruptcy@gmlaw.com

-Whitney L Warnke Groff on behalf of Creditor Wells Fargo Bank, NA.
flecf@aclawllp.com

(Attorney Miller shall file a certificate of service as to this Order)

6



**ORDERED in the Southern District of Florida on June 6, 2013.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

GARY ALLAN FERGUSON,

_____Debtor-In-Possession_____/

Case No. 12-22368-LMI
Chapter 11

### ORDER DENYING CREDITOR'S, DAVID BEEM'S, MULTIPLE EMERGENCY MOTIONS
### (DE#'S 283, 286 and 287)

This matter came on before the Court on June 5th, 2013 at 9:30 p.m., for hearing

on: *1) Creditor's, David Beem's, Emergency Motion To Compel Debtor To Comply With*

*Order To Complete Property Sale, And For An Award Of Attorneys (sic) Fees And/Or*

*Contempt* [DE#283]; *Creditor's David Beem's, Supplemental Emergency Motion To*

*Compel Debtor To Comply With Order To Complete Property Sale, And For An Award Of*

*Attorneys (sic) Fees And/Or Contempt* [DE#286]; and, *Creditor's David Beem's, Mended*

*(sic) Supplemental Emergency Motion To Compel Debtor To Comply With Order To*

*Complete Property Sale, And For An Award Of Attorneys (sic) Fees And/Or Contempt*

[DE#287] (collectively, all three motions are hereinafter referred to as the "Motion"), and

the Court, being familiar with the record, noting the earlier orders (DE's 173, 277 and

278), heard argument of counsel, and for the reasons set forth on the record, does hereby

ORDER and ADJUDGE that:

1.  The Motion is DENIED.

2.  The closing agent shall move forward with the sale as contemplated in DE#'s

    173, 277 and 278, with the following caveats:

    a.  Pay the sum of $992.50 to Genovese Joblove & Battista for its charging

        lien ["GJB Lien"] pursuant to the terms of this Court's Order dated May

        21, 2013 (DE#277). Only from David Beem's portion of the sale

        proceeds shall the GJB Lien be paid, with the net then being wired or

        paid directly to David Beem and/or his counsel according to his wiring

        instructions;

    b.  Pay the sums of $31,097.85 for principal and $4,954.91 in interest (as of

        June 5th, 2013, plus $6.05 in per diem interest until the closing date for

        the period commencing May 31, 2013 through closing) to Steven D.

        Losner, P.A. for the Lenore Ferguson Trust mortgage ["LFT Mortgage"]

        (OR Book 21793 PG 1560);

    c.  Pay to the law firm of James B. Miller P.A. Trust Account the sums of

        $5,500.00 as disputed attorney fees owed to the LFT Mortgage and

        $805.00 in disputed late fees owed to the LFT Mortgage (which shall be

        held in said Trust Account pending further order of this Court;

    d.  After deducting for the LFT Mortgage items (principal, interest, late fees

        and attorney fees), the balance of the sale proceeds shall be evenly

        divided between David Beem, and the Fergusons (with the Ferguson

        portion being made payable to the Debtor's counsel's Trust Account);

        and,

Case 13-23732-LMI Doc 289 Filed 06/06/13 Page 3 of 3

c. No proceeds shall be escrowed or paid to or for the benefit of Kim Ferguson as it relates to her claim for $1,440.00 from David Beem's interest in the sale proceeds.

3. This ORDER is effective immediately and the Rule 6004(h) waiting requirements are herein waived for good cause.

### 

Submitted by:

James B. Miller, Esq.

Copies to (via ecf):

Jeffrey S. Berlowitz on behalf of Creditor Estate of Gary Brooks jberlowitz@siegfriedlaw.com, mcabrera@siegfriedlaw.com

Alice A Blanco on behalf of Creditor Wells Fargo Bank, NA. flecf@aclawllp.com

Ana-Laura Diaz on behalf of Creditor Wells Fargo Bank, NA aldiaz13@gmail.com

Mariaelena Gayo-Guitian on behalf of Interested Party Genovese Joblove & Battista, P.A. mguitian@gjb-law.com, gjbecf@gjb-law.com;vlambdin@gjb-law.com;ktoland@gjb-law.com;chopkins@gjb-law.com

James B Miller, Esq on behalf of Debtor Gary Allan Ferguson    bkcmiami@gmail.com

Jeffrey A Norkin on behalf of Creditor David Beem    jeff@norkinlaw.com

Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

Ariel Rodriguez on behalf of U.S. Trustee Office of the US Trustee    ariel.rodriguez@usdoj.gov

Tennille M. Shipwash, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association tennille.Shipwash@gmlaw.com, Bankruptcy@gmlaw.com

Whitney L Warnke Groff on behalf of Creditor Wells Fargo Bank, NA.    flecf@aclawllp.com

(Attorney Miller shall serve a conformed copy of this Order upon all interested parties not receiving a copy via ECF, and file a certificate of service)